El Pueblo de Puerto Rico, demandante y apelado, *v.* Justi-liano Báez, acusado y apelante.

Número: CR-71-52     Resuelto: 4 de mayo de 1972

*Enrique Miranda Merced,* abogado del apelante; *Gilberto Gierbo-lini, Procurador General, y Roberto Armstrong, Jr., Procura-dor General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

Por una infracción a la Sec. 4 de la Ley Núm. 87 de 22 de junio de 1962 (29 L.P.R.A. sec. 530) el apelante, un obrero analfabeto residente en las parcelas Jauca de Santa Isabel, fue sentenciado a pagar una multa de $500.00 ó en su defecto un día de cárcel por cada dólar que dejare de pagar sin exceder la prisión subsidiaria de 90 días.

En vista de que un gran número de nuestros trabajadores salen de Puerto Rico hacia Estados Unidos y otras partes, en busca de oportunidades de trabajo, el Departamento del Trabajo del Estado Libre Asociado de Puerto Rico ha venido desarrollando normas para la máxima protección de esos tra-

bajadores sobre todo los agrícolas. Los esfuerzos de dicho Departamento para la protección de los trabajadores puertorriqueños venía tropezando con el inconveniente que presentaban aquellos patronos y agentes que trataban de circunvenir la ley y las normas establecidas por el Departamento del Trabajo reclutando trabajadores y llevándolos a trabajar a Estados Unidos sin un contrato que les ofreciera las debidas garantías. Ello hizo necesario la aprobación de una ley que regule la contratación de trabajadores cuyos servicios hayan de utilizarse fuera de Puerto Rico para ajustarla a las necesidades que se han advertido en la administración del programa encaminado a extender garantías y protección maxima a los trabajadores emigrantes. [1]

Por tales consideraciones se aprobó la Ley Núm. 87 de 22 de junio de 1962. Dicha ley confirió autoridad al Secretario del Trabajo para entender por sí o por sus agentes en todo lo concerniente a la contratación de trabajadores cuyos servicios vayan a utilizarse fuera de Puerto Rico. Sec. 1.

En su Sec. 2 impuso a toda persona, organización o agente que se proponga, por sí o por cualquier medio, reclutar y contratar trabajadores para trabajar en cualquier lugar fuera de Puerto Rico, la obligación de comunicarse con el Secretario del Trabajo e informarle, en los formularios que se le suministren, todos los pormenores que se detallan en dicha Sec. 2, y en su Sec. 3 les impone la obligación de formalizar un contrato por escrito con las personas que haya de emplear, el cual debe contener las garantías mínimas que se fijen por el Secretario del Trabajo mediante reglamento, contrato este que deberá ser aprobado por dicho funcionario.

La Sec. 4, por cuya infracción fue condenado el apelante, dispone:

"Sección 4.—Será ilegal el reclutamiento y/o la transportación de trabajadores para trabajar fuera de Puerto Rico, por

---

[1] Exposición de Mótivos de la Ley Núm. 87 de 22 de junio de 1962.

parte de cualquier persona u organización o sus agentes sin la debida autorización del Secretario o su representante autorizado. A los efectos de esta sección, se entenderá por 'transportación' cualquier acto consistente en gestionar, *inducir a obtener o entregar pasajes por cualquier medio para cualquier persona dentro de los límites de Puerto Rico,* para ir a trabajar fuera de Puerto Rico; así como el traslado físico de los trabajadores a sabiendas de que éstos van a trabajar fuera de Puerto Rico sin la debida autorización." (Énfasis nuestro.)

Para sostener la acusación el fiscal presentó los testimonios de Gregorio Rodríguez Norat y Germán Santiago.

El primero de ellos, Gregorio Rodríguez Norat declaró, en síntesis, en el examen directo, que reside en el Barrio Jauca; en la noche del 15 de junio de 1969 se encontraba en el aeropuerto de San Juan porque se iba para los Estados Unidos a trabajar y tenía un pasaje. Ese pasaje y $25.00 se lo llevó a su casa el acusado Justo Báez y le dijo que el sitio donde iba a trabajar era "Glassborough"; que al entregarle el pasaje le dijo que si quería ir a trabajar a lo que le contestó que sí, que necesitaba ir a trabajar, que pagó $5.00 por su pasaje en automóvil hasta el aeropuerto.

En la repregunta declaró que se analfabeto; que el acusado vive en el mismo barrio de Jaucas y también es analfabeto; que no conoce a Luis López García ni a Virgilio Rivera; que nunca antes había salido a trabajar fuera de Puerto Rico; que al acusado entregarle el pasaje el dijo que Virgilio Rivera se lo había dado para que se lo entregara; que sabía que eran unos 16 los que iban a trabajar; que el acusado le dijo que Virgilio Rivera se los entregó a él para entregárselos a ellos; que eran cinco los primeros que iban y después iban cinco más.

Germán Santiago declaró en síntesis, que vive en el Barrio Jauca de Santa Isabel; que en la medianoche del 15 de junio de 1969 se encontraba en el aeropuerto con cuatro personas más, entre ellas el acusado, porque todos iban a trabajar en Nueva Jersey; que el que habló con él para ir a trabajar fue el

acusado. El fiscal le preguntó como fue que le entregaron el pasaje a lo que contestó:

"El me dijo que había un señor que había sacado un pasaje, yo no lo conozco, yo le dije, 'trata de conseguirme uno, yo estoy desempleado y quiero trabajar', él me dijo que si acaso el señor le daba los pasajes y yo le dije que tratara de conseguirlo."

A la pregunta del fiscal de si Justiliano iba a hablar con un señor que iba a sacar un pasaje, contestó: "Ajá, yo le dije que como no conocía al señor que me lo consiguiera, como yo estaba desempleado y quería trabajar y el pasaje me lo mandaran a casa." Declaró que además del pasaje le entregaron $25.00; que entre los que se iban a trabajar estaba el acusado; que no conoce a Virgilio Rivera ni a Luis López García; que no tiene contrato con ninguna agencia en Salinas para pagar el pasaje; que el pasaje lo iban a pagar por medio del trabajo según se lo informó a Justiliano el señor que le entregó el pasaje.

Por la defensa declararon dos testigos que dijeron conocer al acusado como un trabajador agrícola pero no como jefe de grupo, "esos señores que se dedican a colectar trabajadores, llevar trabajadores a ciertas fincas . . . ."

El propio acusado declaró que ha sido picador de caña toda su vida y que además trabaja en cualquier otra faena agrícola; que se analfabeta. Al preguntarle el señor juez sobre el asunto de los pasajes, declaró:

"Hon. Juez:

Cómo era el asunto?

El asunto de esos pasajes es que se los mandaron a Luis López García, entonces él está embarcado y él le mandó la carta al suegro, Virgilio Rivera, al mandarla él estuvo en las parcelas para tener una reunión con los que iba a mandar, entre las reclutaciones estaba yo. Me dio un pasaje entonces, conmigo le mandó un pasaje a este muchacho, me dijo, 'llévemele este pasaje a fulano de tal', como yo lo conocía yo se lo llevé . . . yo soy inocente, yo iba a trabajar porque estaba sin trabajo y así me fui solo para el aeropuerto; no se de letras, no conozco nada.

LCDO. VIERA:

¿De manera, don Justo, que tanto usted como Gregorio Norat y Germán iban a hacer lo mismo?

Sí, lo mismo; me dieron ese pasaje y venticinco pesos.

¿Quién le dio ese pasaje?

Don Virgilio Rivera que fue el que los distribuyó.

¿Y cómo se compraron esos pasajes?

Yo no se como se compraron esos pasajes; los sacaron en Salinas, él los sacó en Salinas.

FISCAL MÉNDEZ:

¿Cómo es?

Esos pasajes los sacó en Salinas Virgilio Rivera, él decía que se los mandaron a Luis López, entonces, Luis López se los mandó al suegro.

LCDO. VIERA:

¿Y el cheque era para el pasaje suyo o de más gente?

Para 16, mil doscientos dólores." (T.E. págs. 41 a 42.)

En la repregunta negó que le hubiera dicho anteriormente al fiscal que él iba a trabajar con Mr. George; admitió que Mr. George había estado aquí y que personalmente Mr. George se llevó 5 trabajadores. Declaró además que no fue a Salinas ni a ningún otro sitio a comprar pasajes.

Ya hemos visto que la Sec. 4 alegadamente infringida por el apelante declara ilegal el reclutamiento y/o transportación de trabajadores para trabajar fuera de Puerto Rico por cualquier persona u organización o sus agentes sin la debida autorización del Secretario del Trabajo o su representante autorizado. La prueba no demuestra más allá de duda razonable, que el apelante reclutara a los obreros Gregorio Rodríguez Norat y Germán Santiago para trabajar fuera de Puerto Rico. La explicación del apelante respecto a como dichos trabajadores recibieron los pasajes, no se produce por vez primera en el juicio; Rodríguez Norat declaró que cuando el apelante le entregó el pasaje y los $25.00 le dijo que Virgilio Rivera se los había dado para que se los entregara a él. En

cuanto al otro obrero, Germán Santiago, se desprende de su propio testimonio, que enterado de que iba a salir un grupo de obreros para Estados Unidos, le pidió al apelante que tratara de conseguirle un pasaje ya que él no conocía a la persona encargada de distribuirlos y entregarlos. La gestión del apelante a esos efectos no puede considerarse, a la luz de los fines perseguidos por la Ley Núm. 87, como un acto de reclutamiento.

■ A los efectos de la Sec. 4, se entenderá por "transportación" "cualquier acto consistente en gestionar, inducir a obtener y entregar pasajes por cualquier medio para cualquier persona dentro de los límites de Puerto Rico, para ir a trabajar fuera de Puerto Rico, . . . ."

■ El conjunto de la prueba demuestra que fue Virgilio Rivera quien gestionó e indujo a obtener o entregar los pasajes a los dos obreros mencionados en la acusación y a otros 14 obreros más. El apelante fue el medio que utilizó para la entrega de los pasajes. La gestión del apelante consistente únicamente en entregar un pasaje a Gregorio Rodríguez, por encomienda de Virgilio Rivera y la de solicitar de éste un pasaje para Germán Santiago por encomienda y pedido del propio Santiago, no debe considerarse que caen dentro en la definición de "transportación", contenida en la susodicha Sec. 4 de la Ley Núm. 87.

*Por las anteriores razones la sentencia apelada debe ser revocada y absolverse al acusado-apelante.*

El Juez Presidente, Señor Negrón Fernández, no intervino. El Juez Asociado, Señor Ramírez Bages, disintió en voto separado con el cual concurre el Juez Asociado, Señor Martínez Muñoz.

—O—

Voto disidente emitido por el Juez Asociado Señor Ramírez Bages con el cual concurre el Juez Asociado Señor Martínez Muñoz.

San Juan, Puerto Rico, a 4 de mayo de 1972

Disiento por entender que, independientemente de que el apelante fuese analfabeto y obrero agrícola, violó las disposiciones de la sec. 4 de la Ley Núm. 87 de 22 de junio de 1962 (29 L.P.R.A. sec. 530) al entregar pasajes a los dos testigos de cargo dentro de los límites de Puerto Rico para ir a trabajar fuera de Puerto Rico. La prueba demuestra que no era un mero mensajero de Virgilio Rivera, sino que, sin autorización del Secretario del Trabajo, reclutó obreros para trabajar fuera de Puerto Rico y, a esos efectos, preguntó a los testigos de cargo si querían ir a trabajar fuera de Puerto Rico; que él les podía conseguir los pasajes. Al contestar éstos que sí, les gestionó el pasaje del referido Rivera y se los entregó informándoles la forma de rembolsar el costo del pasaje y el lugar donde iban a trabajar.

A base de la prueba aducida en este caso, el juez sentenciador tuvo fundamentos para concluir más allá de duda razonable que el apelante era culpable del delito que se le imputó. Por tal razón, creo que se ha debido sostener la convicción.